UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEAN MATTHEWS,

     Plaintiff,

v.                                                         Case No: 8:22-cv-679-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## **ORDER**

     Plaintiff Jean Matthews seeks judicial review of the denial of her claim for disability insurance benefits (DIB).  As the Administrative Law Judge's (ALJ) decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

### **A.    Procedural Background**

     Plaintiff filed an application for DIB on January 3, 2018.  (Tr. 115, 314–17, 319–20.)    The Commissioner denied Plaintiff's claim both initially and upon reconsideration.  (Tr. 173–74, 177–78.)  Plaintiff then requested an administrative hearing.  (Tr. 184–85.)  An ALJ held a hearing on September 23, 2019, at which Plaintiff appeared and testified.  (Tr. 45–79.)  Following the hearing, the ALJ issued an unfavorable decision dated October 22, 2019, finding Plaintiff not disabled.  (Tr.

146–59.)  On September 24, 2020, the Appeals Council vacated the October 22, 2019 decision and remanded Plaintiff's case for further review.  (Tr. 165–68.)  On February 1, 2021, the same ALJ held another hearing, and on April 30, 2021, issued a new decision finding Plaintiff not disabled and denying Plaintiff's claim for benefits.  (Tr. 9–25, 80–103.)  On January 19, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's April 30, 2021 decision.  (Tr. 1–3.)  Plaintiff then timely filed a complaint with this court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. § 405(g).

   B.   **Factual Background and the ALJ's Decision**

   Plaintiff, who was born in 1957, claimed disability beginning on August 30, 2016.  (Tr. 314.)  Plaintiff has a high school education and past relevant work experience as a secretary.  (Tr. 23, 50–51, 349, 357, 386–87.)  Plaintiff alleged disability due to short term memory loss, chronic depression, anxiety, panic attacks, high blood pressure, high cholesterol, thyroid problems, and atrophy of the brain.  (Tr. 348.)

   In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since August 30, 2016, the alleged onset date.  (Tr. 15.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder; hypothyroidism; and obesity.  (Tr. 15.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1. (Tr. 15–17.) The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to

> perform medium work as defined in 20 CFR 404.1567(c) except the claimant can understand, remember, carry out, and maintain persistence for work duties that are detailed when tasks are combined but made up of simple tasks requiring only common sense understanding, in a work environment with few day-to-day changes in terms of work processes, work settings, or work duties.

(Tr. 17.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 18.)

Considering Plaintiff's RFC and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could not perform her past relevant work, but could perform other jobs existing in significant numbers in the national economy, such as laundry worker, hand packager, and kitchen helper. (Tr. 23–25.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 25.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g).

- 4 -

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to consider whether Plaintiff was entitled to a closed period of disability; (2) the ALJ failed to properly evaluate medical opinions; and (3) the ALJ failed to properly assess Plaintiff's RFC.  For the reasons that follow, none of these contentions warrant reversal.

### A.    Plaintiff's Claim to a Closed Period of Disability

First, Plaintiff contends the ALJ erred by failing to consider the possibility of disability during any twelve-month period from August 30, 2016, Plaintiff's alleged onset date, through April 30, 2021, the date of the ALJ's decision.  (Dkt. 19 at 14–19.) Specifically, Plaintiff argues the ALJ should have considered whether Plaintiff was disabled from August 30, 2016, through April 18, 2018, when Plaintiff completed an intensive treatment program at Rogers Behavioral Health.  Plaintiff alleges "[i]t was after this that the ALJ could say there was some improvement." (*Id.* at 18.)  In response, the Commissioner argues that Plaintiff's failure to put the ALJ on notice that she was alleging a closed period of disability precludes her from arguing that her case should be remanded on this basis.  (Dkt. 20 at 6.)  Additionally, the Commissioner argues that the ALJ implicitly found Plaintiff was not disabled for any consecutive twelve-month period during the relevant period when he found Plaintiff not disabled from her alleged onset date through the date of the decision.  (*Id.* at 7.)

"An individual claiming Social Security disability benefits must prove that he is disabled." *Rodriguez v. Comm'r of Soc. Sec.*, 737 F. App'x 514, 516 (11th Cir. 2018)[1] (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  As noted above, the applicable regulations define disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Thus, to be entitled to benefits, Plaintiff must satisfy a durational requirement of twelve continuous months of disability.  *See Barnhart v. Walton*, 535 U.S. 212, 218–25 (2002).

Here, substantial evidence supports the ALJ's conclusion that Plaintiff never lost the ability to perform a limited range of medium work for a continuous twelve-month period, despite her severe impairment of major depressive disorder.  As an initial matter, Plaintiff never requested a closed period of disability at the administrative level, despite being represented by counsel.  And Plaintiff does not cite any binding authority requiring the ALJ to consider whether a claimant is disabled for a closed period—especially when the claimant does not raise the issue before the ALJ. (Dkt. 21 at 2–3.)  The court finds persuasive the reasoning of decisions in this district holding that a claimant's failure to raise a closed period of disability either before the ALJ or the Appeals Council precludes a review of this issue on appeal.  *See Jenkins v.*

---

[1] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th Cir. R. 36-2.

*Saul*, No. 8:20-cv-76-AAS, 2021 WL 8971505, at *4 (M.D. Fla. Mar. 22, 2021) ("A claimant's failure to request consideration of a closed period of disability precludes the claimant from arguing on appeal to the district court that the ALJ erred by failing to consider the same.") (citations omitted); *see also Hein v. Saul*, No. 8:18-cv-1459-T-AAS, 2019 WL 4509381, at *6 (M.D. Fla. Sept. 19, 2019) (same); *Torres v. Comm'r of Soc. Sec.*, No. 6:13-cv-1687-Orl-GJK, 2015 WL 898576, at *6 (M.D. Fla. Mar. 3, 2015) (same); *Rambo v. Comm'r of Soc. Sec.*, No. 6:20-cv-1527-DCI, 2021 WL 5843106, at *3 (M.D. Fla. Dec. 9, 2021) ("Claimant did not request a closed period of disability before the ALJ, she cannot argue here that the ALJ failed to consider it, and the claim is due to be rejected.").

Moreover, the ALJ expressly found that Plaintiff was not under a disability from August 30, 2016, through the date of his decision, which includes the period of time that Plaintiff argues should have been considered as a closed period of disability. (Dkt. 19 at 16.) *See Benitez v. Comm'r of Soc. Sec.*, No. 2:17-cv-283-FtM-MRM, 2018 WL 6680985, at *3 (M.D. Fla. Sept. 8, 2018) ("When an ALJ determines that a claimant is not disabled at any time during the period from his alleged onset date to the date of the hearing and this decision is supported by substantial evidence, then the ALJ has not erred in failing to consider a claimant's eligibility for a closed period of disability.") (citing *Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 772–73 (11th Cir. 2006)).

Further, as discussed in the next section, the ALJ evaluated medical evidence from the period which Plaintiff alleges should have been considered as a closed period of disability. *See* (Tr. 19 (considering evidence from late 2016 through April 18, 2018,

when Plaintiff completed the intensive outpatient program at Rogers Behavioral Health).)  The ALJ found that treatment records from this period revealed that at times Plaintiff had a depressed mood, flat effect, slowed speech, and impaired attention, concentration, and memory.  (Tr. 19.)  However, Plaintiff was also noted to be

> logical, attentive, and cooperative with fair insight and judgment, clear thought content, normal thought processes, normal behavior, and normal speech[,] . . . normal remote memory, intact recent memory, and normal affect[,] . . . appropriate behavior, intact and appropriate thought processes, appropriate judgment and insight, and normal thought content . . . calm, cooperative, and pleasant with normal psychomotor activity, normal speech, consistent eye contact, euthymic affect, normal thought content, and logical, goal oriented, and linear thought processes . . . [with] intact long-term memory, average intelligence, and fair insight and judgment.

(Tr. 19.)  While Plaintiff argues the evidence from August 30, 2016, through April 18, 2018, supports a finding of disability, the standard of review specifies that the ALJ's decision does not merit reversal where substantial evidence supports it.[2]  *See Stout v. Comm'r of Soc. Sec.*, No. 2:21-cv-164-MRM, 2022 WL 2115484, at *3 (M.D. Fla. June 13, 2022) ("Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.") (citations and quotations omitted).  And here, the ALJ

---

[2] In the Reply Memorandum, Plaintiff argues "the ALJ specifically found that [Plaintiff] improved after her admission to the partial hospitalization program at Rogers Behavioral Health, which ended in April, 2018."  (Dkt. 21 at 3–4.)  However, as discussed in the next section, the ALJ did not make this finding, but rather summarized findings in the medical record.  (Tr. 19, 631.)

cited substantial evidence in support of his finding that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from August 30, 2016, through the date of [the ALJ's] decision."  (Tr. 25.)

Accordingly, the court finds that the ALJ did not err in failing to consider whether Plaintiff qualified for a closed period of disability.

## B.    The ALJ's Evaluation of Medical Opinions

Plaintiff next argues the ALJ erred in the evaluation of the opinions of Anthony Conti, Jr., LMHC, Jeffrey Reddout, Ph.D., Melanie Chandler, Ph.D., and Ankur Goyal, M.D.  (Dkt. 19 at 19–22.)   In response, the Commissioner argues that substantial evidence supports the ALJ's finding that the opinions of Counselor Conti, Dr. Reddout and Dr. Chandler were not persuasive, and that the opinion of Dr. Goyal was only partially persuasive.  (Dkt. 20 at 10.)

Plaintiff filed her application for DIB on January 3, 2018.  (Tr. 115, 313–17.) Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings.  We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.  When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through

(c)(5) of this section, as appropriate.[3]   The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).   We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).  The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." *Id.* § 404.1520c(b)(2).[4]  "Courts have found that '[o]ther than articulating [her] consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how [she] considered any other factor in determining persuasiveness.'" *Bell v. Comm'r of Soc. Sec.*, No. 6:20-cv-1923-DCI, 2021 WL 5163222, at *2 (M.D. Fla. Nov. 5, 2021) (quoting *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)); *see also Delaney v. Comm'r of Soc. Sec.*, No. 6:20-

---

[3] Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(c).

[4] "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

cv-2398-DCI, 2022 WL 61178, at *2 (M.D. Fla. Jan. 6, 2022) (noting that the ALJ may, but is not required to, explain how he or she considered the remaining factors besides supportability and consistency).

Additionally, pursuant to the new regulations, a "medical opinion" is defined as "a statement from a medical source about what [the claimant] can still do despite [his/her] impairments" and whether the claimant has any "impairment-related limitations or restrictions" regarding certain enumerated abilities.   20 C.F.R. § 404.1513(a)(2).   A "medical opinion" does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."   *Id.* § 404.1513(a)(3) (defining these categories of information as "other medical evidence"); *see also Rice v. Kijakazi*, No. 4:20-cv-01414-RDP, 2021 WL 3473219, at *5 (N.D. Ala. Aug. 6, 2021) ("Statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations.").

Moreover, it is strictly the ALJ's duty to determine the claimant's RFC.   *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877–78 (11th Cir. 2013). While opinion evidence is helpful, it is not dispositive.   *Id.* (citations omitted); *see also Williams v. Comm'r, Soc. Sec. Admin.*, 580 F. App'x 732, 734 (11th Cir. 2014) (noting that "the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion").

### 1.    *Counselor Conti and Dr. Reddout*

Counselor Conti and Dr. Reddout treated Plaintiff for depression at Focus Services starting in August of 2016 through February of 2017.   (Tr. 499–522.) Counselor Conti evaluated Plaintiff on August 31, 2016, and September 13, 2016.  (Tr. 499.)  On September 14, 2016, he completed a medical source statement on Plaintiff's behalf, based on these two visits.  (Tr. 499–501.)  Counselor Conti diagnosed Plaintiff with major depressive disorder, recurrent, moderate, characterized by "significant cognitive and functional impairment marked by tearful episodes, broken concentration, uncharacteristic mistakes and dissociative-like behavior."  (Tr. 499.) He opined Plaintiff was "[a]ble to perform routine activities on a slowed basis with degree of coaxing and encouragement."  (Tr. 500.)  Counselor Conti also opined that Plaintiff did not have the ability to perform the following temperaments in a work setting: (1) directing, controlling, and planning; (2) performing repetitive work; (3) influencing people; (4) performing a variety of duties; (5) expressing personal feelings; (6) working alone or in isolation; (7) performing under stress; (8) attaining precise limits/tolerances; and (9) making judgments and decisions.  (Tr. 501.)  He further opined that Plaintiff was able to follow specific instructions and deal with people beyond giving and receiving instruction such as working as a member of a team or committee.  (Tr. 501.)  Counselor Conti stated that Plaintiff's limitations were based on a recent setback with the loss of her mother-in-law and several other disabling factors.  (Tr. 501.)

- 13 -

Dr. Reddout, a licensed psychologist, completed two virtually identical medical source statements on Plaintiff's behalf, on October 25, 2016, and November 22, 2016, based on his evaluation of Plaintiff on October 4, 11, 18, and 25, 2016, and November 1, 2016.  (Tr. 502–07.)  Dr. Reddout reported that at each visit, Plaintiff's mood was dysphoric, anxious, and irritable, but her alertness, orientation, behavior/psychomotor speed, speech thought process and content, judgment, and insight were all within normal limits, and her affect was congruent.  (Tr. 502, 505.)  He found Plaintiff had no cognitive impairment, other than poor concentration and distractibility secondary to significant depression.  (Tr. 502, 505.)  He opined that due to depression, Plaintiff had variable limitations on all functioning activities, and that her concentration, memory and/or attention were significantly reduced.  (Tr. 504, 507.)

The ALJ considered both opinions and found them not persuasive.  (Tr. 21.) As to Counselor Conti's opinion, the ALJ stated:

> The opinion of Mr. Conti is not persuasive, because it is based on two encounters with the claimant in August and September 2016, and is based on the subjective reports of the claimant at a time of crisis, and not on objective clinical examination or testing.  Further, Mr. Conti anticipated that the claimant's symptoms would improve over the next few months with treatment, but there are no reports in the record showing that the claimant ever returned to Mr. Conti for another therapy session after September 13, 2016.

(Tr. 21.)  In regard to Dr. Reddout's opinions, the ALJ stated:

> Psychologist Jeffery Reddout, Ph.D signed substantially identical medical source statements dated October 25, 2016 and November 22, 2016, in which he reported that he had

- 14 -

met with the claimant on October 4, 11, 18, and 25, 2016, and November 1, 2016 and that the mental status examinations performed at these meetings showed that the claimant's mood was dysphoric, anxious, and irritable, but that her alertness, orientation, behavior, speech, thought process, thought content, judgment and insight have all been within normal limits (Exhibit 1F). Despite the mostly normal mental status examinations, Dr. Reddout opined that the claimant had variable limitations on her ability to perform work tasks and that her concentration, memory, and attention were significantly reduced due to severe depression (Exhibit 1F). Although the forms completed by Dr. Reddout directed him to document his clinical observations and test results, no such support for his opinion is included on either of the forms (Exhibit 1F). The opinions of Dr. Reddout are not persuasive, because, like the opinion of Mr. Conti, they are based on limited observation of the claimant during a time that she was experiencing the unusual and significant stresses caused by the recent death of a loved one, and are based on a temporary exacerbation of her symptoms prior to her seeking treatment by a psychiatrist for medical management of her symptoms. Dr. Reddout's opinions are not consistent with the claimant's subsequent treatment records, which show substantial improvement in her symptoms when she complied with her prescribed treatment regimen.

(Tr. 21–22.)

While the ALJ did not use the terms "supportability" and "consistency," it is clear the ALJ considered both factors in evaluating the opinions and the ALJ's decision is supported by substantial evidence. *See Lewno v. Kijakazi*, No. 8:21-cv-1334-SPF, 2022 WL 3999282, at *5 (M.D. Fla. Sept. 1, 2022) ("Use of these words [supportability or consistency] is not required, however, as long as the ALJ's findings were ultimately based on these factors.") (citations omitted); *see also Thaxton v. Kijakazi*, No. 1:20-cv-616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) (stating that

- 15 -

"the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record").

First, the ALJ considered the supportability factor.  In regard to Counselor Conti's opinion, the ALJ found that it was unsupported as it relied on Plaintiff's subjective complaints, "and not on objective clinical examination or testing." (Tr. 21.) Indeed, as the ALJ noted, Counselor Conti stated that his assessment of Plaintiff's cognitive impairment was based on "interview and collateral contact with spouse." (Tr. 499.)  Thus, the ALJ properly evaluated the supportability of Counselor Conti's opinion.  *See Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (stating that a treating physician's opinion may be discounted where "the opinion appears to be based primarily on the claimant's subjective complaints of pain") (citation omitted); *Hutchison v. Kijakazi*, No. 3:21-cv-211-DCP, 2022 WL 4388285, at *6 (E.D. Tenn. Sept. 22, 2022) (stating, under the new regulations, that "[t]he fact that a medical source's opinion is based primarily on a claimant's subjective complaints and reported symptoms is an adequate basis for discounting the supportability of the opinion").

The ALJ also considered the supportability factor in evaluating Dr. Reddout's opinions.   The ALJ noted that "[d]espite the mostly normal mental status examinations, Dr. Reddout opined that [Plaintiff] had variable limitations on her ability to perform work tasks and that her concentration, memory, and attention were significantly reduced due to severe depression." (Tr. 21.)  Indeed, as noted above, at each visit Dr. Reddout reported Plaintiff's "mood was dysphoric, anxious, and

- 16 -

irritable, but that her alertness, orientation, behavior, speech, thought process, thought content, judgment and insight ha[d] all been within normal limits." (Tr. 21, 502, 505.) The ALJ also noted that Dr. Reddout did not provide support for his opinions, "[a]lthough the forms . . . directed him to document his clinical observations and test results." (Tr. 21.) *See, e.g.*, *Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011) (finding the ALJ had good cause not to give controlling weight to the treating physician's opinions stated in forms which did not adequately explain his opinions); *Anderson v. Colvin*, No. 8:14-cv-256-T-TGW, 2015 WL 1347414, at *3 (M.D. Fla. Mar. 24, 2015) ("Notably, the conclusory nature of the Questionnaire is, in itself, a recognized basis for discounting a treating physician's opinion.") (citations omitted). Thus, the ALJ properly evaluated the supportability of Dr. Reddout's opinions.

In addition to the supportability factor, the ALJ considered the consistency factor when evaluating Counselor Conti's and Dr. Reddout's opinions. The ALJ noted that the opinions were based "on limited observation of [Plaintiff] during a time that she was experiencing the unusual and significant stresses caused by the recent death of a loved one." (Tr. 21.) The ALJ pointed to subsequent treatment records "which show[ed] substantial improvement in [Plaintiff's] symptoms when she complied with her prescribed treatment regimen," and which the ALJ discussed as part of his RFC determination. *See Thaxton*, 2022 WL 983156, at *8 ("An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings."); *see also Rice v. Barnhart*, 384 F.3d

- 17 -

363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and

. . . it would be a needless formality to have the ALJ repeat substantially similar factual

analyses").

Plaintiff argues the ALJ improperly relied on evidence after "the point of

improvement instead of evaluating for the time period for which [they] applied." (Dkt.

19 at 19.)  Plaintiff mischaracterizes the ALJ's decision, stating the ALJ found that her

"condition did not show improvement . . . until April, 2018[,]" when she completed

the intensive treatment program at Rogers Behavioral Health.  (Dkt. 21 at 3, 5.)

Contrary to Plaintiff's argument, the ALJ did not make such a finding.  The ALJ

summarized treatment records from the Rogers Behavioral Health which indicated

"[w]hile [Plaintiff] was in treatment, she attended treatment daily and has shown

*moderate improvement overall*."  (Tr. 631 (emphasis added).)

Moreover, Counselor Conti opined Plaintiff's "symptoms would improve over

the next few months with treatment" and that Plaintiff was expected to return to work

on February 28, 2017.  (Tr. 500.)  And while the ALJ acknowledged treatment records

indicating moderate improvement after Plaintiff's partial hospitalization program at

Rogers Behavioral Health, the ALJ also noted Plaintiff's largely normal findings prior

to the intensive treatment program.  *See* (Tr. 19.)

Counselor Conti's treatment records from August 30, 2016, when Plaintiff had

her first examination at Focus Services, indicate that Plaintiff was being treated for

depression.  (Tr. 500.)  As noted above, the ALJ considered treatment records from

Focus Services, and found that while Plaintiff "was noted to have a depressed mood,

- 18 -

flat affect, and slowed speech," she "was also logical, attentive, and cooperative with fair insight and judgment, clear thought content, normal thought processes, normal behavior, and normal speech after the initial examination."  (Tr. 19, 499, 502, 505, 518.)  On March 8, 2017, and April 6, 2017, Plaintiff was examined by Sheri Mehl, ARNP.[5]  Nurse Practitioner Mehl noted Plaintiff's subjective reports of memory loss, *see, e.g.*, (Tr. 538, 543), but found Plaintiff "had normal remote memory, intact recent memory, and normal affect."  (Tr. 19, 538–39, 543.)

Additionally, the ALJ considered a consultation that Plaintiff received "at the Mayo Clinic neurology department from June to August 2017 due to reported memory problems."  (Tr. 19, 551–61.)  The ALJ noted that "[t]esting revealed that she had mildly inefficient concentration in the context of major depressive disorder, recurrent, moderate, and undifferentiated anxiety disorder, but was otherwise cognitively normal."  (Tr. 19, 555–56, 561.)  And while "[s]he was also reported to have a depressed mood and mildly anxious appearance," she "was cooperative with fluent and normal speech, appropriate behavior, intact and appropriate thought processes, appropriate judgment and insight, and normal thought content."  (Tr. 19, 555–56, 559.)  The ALJ noted that Plaintiff "underwent a magnetic resonance imaging scan (MRI) of her brain and an electroencephalogram (EEG) that were normal."  (Tr. 19, 545, 561.)

---

[5] Plaintiff argues that the ALJ erroneously attributed Nurse Practitioner Mehl's findings to Thomas DiGeronimo, M.D.  While Plaintiff is correct, the ALJ's error was harmless because the regulations deem an advanced registered nurse practitioner (ARNP) to be an acceptable medical source.  *See* 20 C.F.R. § 404.1502(a)(7).

The ALJ also considered medical records from Lakeland Regional Health where Plaintiff "was treated in late 2017 and early 2018 . . . for chronic major depression and short-term memory loss." (Tr. 19, 602–26.)  These records indicate Plaintiff had "a depressed mood and impaired attention, concentration, memory, and fund of knowledge at times." (Tr. 19, 605, 612, 620, 625.)  However, the ALJ noted "she had a euthymic mood and adequate attention, concentration, memory, and fund of knowledge at other times and was generally pleasant and cooperative with regular speech, normal thought content, fair to good insight and judgment, and linear and goal directed thought processes." (Tr. 19, 605, 608–09, 613, 616–17, 620, 625.)  Moreover, on January 11, 2018, Plaintiff reported that she "was not able to attend [the intensive outpatient program] secondary to transportation problems, state[d] that she [felt] her symptoms ha[d] improved enough that she [was] able to continue with the current treatment plan, and hope[d] for continued improvement of symptoms." (Tr. 602–03.)  Thus, the ALJ properly evaluated the consistency of Counselor Conti's and Dr. Reddout's opinions and found them inconsistent with subsequent treatment records revealing substantial improvement in Plaintiff's symptoms with treatment.

Furthermore, in addition to the supportability and consistency factors, the ALJ appropriately considered Counselor Conti's and Dr. Reddout's relationships with Plaintiff, including the length, frequency, purpose, and extent of the treatment relationships, which are relevant factors under the regulations.  *See* 20 C.F.R. § 404.1520c(c).  The ALJ noted Counselor Conti's opinion was based on two encounters, and that "there [were] no reports in the record showing that [Plaintiff] ever

- 20 -

returned to Mr. Conti for another therapy session after September 13, 2016." (Tr. 21.) The ALJ also considered Plaintiff's treatment relationship with Dr. Reddout, finding that his opinions, "like the opinion of Mr. Conti, . . . are based on limited observation of [Plaintiff] during a time that she was experiencing the unusual and significant stresses caused by the recent death of a loved one, and are based on a temporary exacerbation of her symptoms prior to her seeking treatment by a psychiatrist for medical management of her symptoms." (Tr. 21–22.) Thus, the ALJ properly considered all evidence in the record and his evaluation of Counselor Conti's and Dr. Reddout's opinions is supported by substantial evidence.

### 2. *Dr. Chandler*

Dr. Chandler evaluated Plaintiff on August 16, 2017, at the Mayo Clinic, for neuropsychological testing and assessment for memory decline. (Tr. 554–56.) Dr. Chandler found Plaintiff "demonstrated mildly inefficient concentration at times, but otherwise normal cognition" and that she was "significantly depressed and likely ha[d] OCD." (Tr. 556.) Dr. Chandler found "no evidence of a neurodegenerative condition." (Tr. 556.) She opined Plaintiff's "depression and anxiety ha[d] impacted her ability to work." (Tr. 556.) Dr. Chandler further stated that as Plaintiff's psychiatric difficulties were adequately treated, she would "have a return of normal function." (Tr. 556.)

The ALJ considered Dr. Chandler's report, stating:

> On August 15, 2017, psychologist Melanie Chandler, Ph.D administered a battery of tests and completed a neuropsychological evaluation of the claimant. Dr.

Chandler reported that her testing and evaluation of the claimant revealed that she had mildly inefficient concentration in the context of major depressive disorder and undifferentiated anxiety disorder, but that the claimant had otherwise normal cognition, and there was no evidence of a neurocognitive condition. Dr. Chandler opined that the claimant's depression and anxiety had impacted her ability to work at that time (Exhibit 4F). The opinion of Dr. Chandler is not persuasive, because it is overly broad and vague, and does not include a function-by-function analysis of the claimant's mental abilities. Further, Dr. Chandler's report also states that she believed that the claimant's symptoms were temporary and that they could be improved with her participation in psychiatric care (Exhibit 4F). As discussed above, the claimant's recent treatment records show substantial improvement in the claimant's symptoms did occur when she complied with her prescribed treatment regimen (Exhibits 16F, 17F, and 18F).

(Tr. 22.) Thus, the ALJ found Dr. Chandler's report unpersuasive because it was "overly broad and vague," and failed to include "a function-by function analysis of [Plaintiff's] mental abilities." (Tr. 22.) Indeed, the court notes that Dr. Chandler's statements do not constitute "medical opinion" evidence as defined by the regulations. Dr. Chandler noted Plaintiff's depression and anxiety impacted her ability to work. But this statement does not specifically explain how Plaintiff's depression and anxiety impacted her ability to work and what Plaintiff could still do despite these impairments. *See* 20 C.F.R. § 404.1513(a)(2). Rather, Dr. Chandler's report consisted of "judgments about the nature and severity of [Plaintiff's] impairments," and Plaintiff's "medical history, clinical findings, diagnosis," which the regulations define as "other medical evidence." *See* 20 C.F.R. § 404.1513(a)(3). Thus, the ALJ was not required to consider Dr. Chandler's report under the requirements of 20 C.F.R. §

404.1520c, and articulate its persuasiveness. *See Dye v. Comm'r of Soc. Sec.*, No. 5:20-cv-459-NPM, 2022 WL 970186, at \*4 (M.D. Fla. Mar. 31, 2022) (finding that the ALJ was not required to assess the purported medical opinion for its persuasiveness where "[n]one of the statements . . . assess[ed] the extent to which [the plaintiff] [could] perform any particular function in a work setting, and so they [did] not constitute 'medical opinions' for purposes of the applicable regulatory regime") (citing 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (stating "the mere existence of these impairments does not reveal the extent to which they limit [the plaintiff's] ability to work or undermine the ALJ's determination in that regard"). Accordingly, the court finds that the ALJ did not err in evaluating Dr. Chandler's statements.

### 3. *Dr. Goyal*

Dr. Goyal, a psychiatrist at Lakeland Regional Behavioral Health Services, began treating Plaintiff on December 13, 2018. (Tr. 806.) On August 6, 2019, Dr. Goyal completed a Mental Impairment Questionnaire on Plaintiff's behalf. (Tr. 830–34.) Dr. Goyal opined that Plaintiff was limited but satisfactory in most areas of mental abilities and aptitudes needed to do unskilled work, except for dealing with normal work stress, in which case Dr. Goyal opined that Plaintiff's ability was seriously limited, but not precluded. (Tr. 833.) He further found Plaintiff seriously limited, but not precluded in mental abilities and aptitudes needed to do semiskilled and skilled work. (Tr. 833.) He opined Plaintiff was limited but satisfactory in interacting appropriately with the general public, maintaining socially appropriate

behavior, adhering to basic standards of neatness and cleanliness, traveling in unfamiliar places, and using public transportation. (Tr. 833.) Dr. Goyal found no restrictions of activities of daily living or difficulties in maintaining social functioning, and seldom deficiencies in concentration, persistence, or pace. (Tr. 834.) But as a result of Plaintiff's impairments, Dr. Goyal opined that Plaintiff had repeated (three or more) episodes of deterioration or decompensation in work or work-like settings which would cause Plaintiff to withdraw from that situation or to experience exacerbation of signs and symptoms. (Tr. 834.) Dr. Goyal also opined that Plaintiff's impairments or treatment would cause her to be absent from work more than three times a month. (Tr. 832.) The ALJ considered Dr. Goyal's opinion and found it "only partially persuasive." (Tr. 23.) The ALJ stated:

> Dr. Goyal opined in August 2019 that the claimant had no limitation in activities of daily living and maintaining social functioning. She would seldom have deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. The claimant was in the good range for 15/16 areas of the mental abilities and aptitudes needed to do unskilled work, but fair range to deal with normal work stress. She was in the fair range in 4/4 areas of mental abilities and aptitudes needed to do semi-skilled and skilled work and the good range in her ability to interact appropriately with the general public, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. However, Dr. Goyal opined the claimant had repeated (three of more) episodes of decompensation and would miss three or more days of work per month (Exhibit 15F).

> The undersigned finds this opinion only partially persuasive because the opinion is internally inconsistent and only somewhat consistent with the medical evidence. The opinion is generally consistent with the medical evidence of

> record aside from two areas, episodes of decompensation and absenteeism. The record contains evidence of one episode of decompensation at most, when the claimant received inpatient care at Rogers Behavioral Health (Exhibit 8F). In addition, the claimant was found to have very little social and cognitive limitation and was in the "fair" range for handling normal work stress, but Dr. Goyal opined that she would miss three days of work per month without any explanation. Accordingly, the undersigned finds these two particular limitations to be unsupported by the medical evidence of record.

(Tr. 22–23.) Thus, the ALJ found Dr. Goyal's opinion only partially persuasive because (1) Dr. Goyal's opinion that Plaintiff would miss three days of work was not supported by his own findings, and (2) Dr. Goyal's opinion of repeated episodes of decompensation was not consistent with the record.

The ALJ's first reason for finding Dr. Goyal's opinion only partially persuasive was due to the lack of support in his own opinion for his conclusion that Plaintiff would miss three days of work. The ALJ noted that Dr. Goyal opined Plaintiff had "very little social and cognitive limitation[s] and was in the 'fair' range for handling normal work stress." (Tr. 23.) The ALJ found these statements inconsistent with Dr. Goyal's opinion that Plaintiff would miss three days of work per month.[6]

---

[6] Contrary to Plaintiff's argument that the ALJ "appl[ied] his own definition of 'fair' rather than the definition used by Dr. Goyal," (Dkt. 19 at 20), the ALJ did not err in concluding Dr. Goyal's opinion on absenteeism was internally inconsistent with his finding that Plaintiff's ability to deal with work stress was fair, meaning that her ability to function in this area was "not precluded." *See Anderson*, 2015 WL 1347414, at \*10 (finding that the doctor's "assessment of the plaintiff's capabilities in certain areas as 'fair' means that the ability to function is 'not precluded'"). Indeed "[h]ad [Dr. Goyal] actually thought [Plaintiff] should be precluded from performing these tasks, he would have marked the category of 'Poor/None'." *See id.* at 4.

Dr. Goyal's treatment notes support the ALJ's finding.  Dr. Goyal consistently found Plaintiff to have fair to good eye contact, appropriate interaction, no psychomotor abnormalities, normal speech, coherent and goal directed thought process, no gross cognitive deficits, with appropriate and average fund of knowledge, normal intellect, grossly intact recent and remote memory, and fair to good insight judgment and impulse control.  (Tr. 20, 789, 794, 799, 804, 809, 923); *see also* (Tr. 892, 898, 903, 908, 913, 918 (Dr. Goyal's treatment records after his August 6, 2019 opinion).)  Although at times Plaintiff's mood was depressed and affect constricted, at other times Plaintiff reported doing better, with mood congruent affect (Tr. 20, 786, 789, 794, 799, 804, 809, 923); *see also* (Tr. 892, 895, 898, 900, 903, 905, 908, 913, 918 (Dr. Goyal's treatment records after the August 6, 2019 opinion).)  Plaintiff denied suicidal or homicidal ideations, auditory or visual hallucinations.  (Tr. 20, 786, 789, 791, 794, 796, 799, 801,804, 806, 809, 920, 923); *see also* (Tr. 889, 895, 898, 900, 903, 905, 908, 913, 918 (Dr. Goyal's treatment records after the August 6, 2019 opinion).)

The ALJ's second reason for finding Dr. Goyal's opinion only partially persuasive is the lack of support in the record, which "contain[ed] evidence of one episode of decompensation at most." (Tr. 23.)  Plaintiff contends that the ALJ applied an incorrect definition of "decompensation" and imposed a hospitalization requirement, by referring to Plaintiff's treatment at Rogers Behavioral Health as "inpatient care." (Dkt. 19 at 21.)  However, in his decision the ALJ stated that Plaintiff "was admitted to the Rogers Behavioral Health partial hospitalization program[,]" and that Plaintiff "attended treatment daily."  *See* (Tr. 19.)  He later noted that after

- 26 -

discharge from the partial hospitalization program, Plaintiff "was transferred to the intensive outpatient program." (Tr. 19.) The ALJ was aware of the type of treatment that Plaintiff received at Rogers Behavioral Health. It is clear that the ALJ referred to Plaintiff's initial month-long partial hospitalization treatment as "inpatient care" to distinguish from the subsequent nine-day outpatient program. Plaintiff's argument that the ALJ imposed a hospitalization requirement is not reflected in the ALJ's decision. (Tr. 23.)

Plaintiff additionally argues that her intensive treatment program at Rogers Behavioral Health, "[t]he period from when she started seeing Counselor Conti until she was evaluated at the Mayo Clinic," and her "two-day episode in August, 2018, at Peace River" constitute periods of decompensation. (Dkt. 19 at 21.) However, the ALJ considered all of these events.

As discussed above, the ALJ considered Plaintiff's treatment at Focus Services and noted that Plaintiff had "a depressed mood, flat affect, and slowed speech, but was also logical, attentive, and cooperative with fair insight and judgment, clear thought content, normal thought processes, normal behavior, and normal speech after the initial examination." (Tr. 19.) The ALJ also considered treatment records from the Rogers Behavioral Health and noted Plaintiff "attended treatment daily and showed moderate improvement overall. She was noted to improve in interpersonal effectiveness and managing her emotions." (Tr. 19, 631.) On April 5, 2018, a day prior to being discharged, Plaintiff "was reported to be calm, cooperative, and pleasant with normal psychomotor activity, normal speech, consistent eye contact, euthymic

affect, normal thought content, and logical, goal oriented, and linear thought processes." (Tr. 19, 636.)  Treatment records from April 9, 2018, to April 18, 2018, when Plaintiff was transferred to the intensive outpatient program, revealed "[h]er mood was noted to be a little depressed at times, but she was generally calm, cooperative, and pleasant with normal psychomotor activity, normal speech, euthymic affect, normal thought content, logical, goal oriented, and linear thought processes, intact long-term memory, average intelligence, and fair insight and judgment." (Tr. 19, 659–60, 662–63.)

And the ALJ considered treatment records from Peace River Center, where Plaintiff was admitted on August 29, 2018, after making suicidal threats, and noted Plaintiff "denied suicidal ideations when she was admitted and was found to not meet Baker Act criteria." (Tr. 19.)  Plaintiff "was reported to have appropriate behavior, fluent and goal directed speech, intact concentration, intact recent memory, intact insight and judgment, euthymic mood, organized thought processes, logical thought content, and no suicidal ideations at discharge on August 30, 2018." (Tr. 19, 713–14.)

The ALJ properly evaluated all of the evidence and found that "at most" it contained one episode of decompensation, namely Plaintiff's treatment in the Rogers Behavioral Health partial hospitalization program. (Tr. 23.)  While Plaintiff argues the evidence supports a different conclusion, Plaintiff's conclusory assertions do not warrant reversal of the ALJ's well-articulated analysis of the record evidence. *See Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49–50 (11th Cir. 2012) (reiterating that the court

"may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner") (quotation and citation omitted).

### C.    The ALJ's RFC Determination

Finally, Plaintiff argues the ALJ erred in assessing Plaintiff's RFC by failing to consider Plaintiff's "superior work history of 41 years continuous work and 37 years continuous work at one employer[,]" which Plaintiff argues "demonstrates that she would work if she could."  (Dkt. 19 at 23.)   Additionally, Plaintiff argues the ALJ failed to consider that Plaintiff "continues to suffer from pseudodementia[,]" which "demonstrates ongoing problems with memory caused by depression and anxiety." (*Id*.)  Lastly, Plaintiff argues "the ALJ failed to consider the difference between non-stress circumstances and normal work circumstances with normal stress."   (*Id*.) According to Plaintiff, "whenever [she] gets in any normal stress situations, she starts to decompose."  (*Id*.)   In response, the Commissioner argues the ALJ's RFC assessment is supported by substantial evidence.  (Dkt. 20 at 12–16.)

At step four of the sequential evaluation process, an ALJ must determine a claimant's RFC and ability to perform past relevant work.   *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  A claimant's RFC is the most work the claimant can do despite any limitations caused by her impairments.  20 C.F.R. § 404.1545(a)(1).  In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence.  *Id*. § 404.1545(a)(2), (e).  A claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence.  *See* 20 C.F.R. § 404.1546(c); *Beegle v. Comm'r of Soc. Sec.*

*Admin.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.").

Here, Plaintiff first argues the ALJ erred in the RFC assessment by failing to consider Plaintiff's work history.[7]   Contrary to Plaintiff's contention, the ALJ did consider Plaintiff's work history in his decision.   At step four of the sequential evaluation process, the ALJ specifically addressed Plaintiff's past relevant work, as a secretary, and found this work "was performed long enough for [Plaintiff] to achieve average performance."   (Tr. 23.)   At the hearing, the ALJ elicited testimony from Plaintiff and the VE regarding past relevant work.   (Tr. 50–51, 75–76.)   Based on the RFC and the testimony of the VE, the ALJ concluded Plaintiff was unable to perform the requirements of her past work.   (Tr. 23.)   While the ALJ did not discuss Plaintiff's work history in his RFC assessment, the ALJ clearly considered it at other steps of his decision.   *See Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *4 (M.D. Fla. July 22, 2022) (finding the ALJ "clearly considered Plaintiff's work history" where the ALJ referenced past relevant experience and "concluded that Plaintiff was '[s]killed' in each of these occupations."); *see also Rios v. Acting Comm'r of Soc. Sec.*, No. 8:16-cv-152-T-PDB, 2017 WL 4216467, at *10 (M.D. Fla. Sept. 22, 2017)

---

[7] As the Commissioner correctly points out, consideration of a claimant's work history may be relevant when evaluating the intensity and persistence of the claimant's subjective symptoms.   *See* 20 C.F.R. § 404.1529(c); *see also* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). However, a claimant's work history is only one factor to consider when evaluating the alleged symptoms.   *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (rejecting a claimant's argument that the ALJ should have accepted her testimony about her pain due to her good work history).

("The ALJ's decision demonstrates he was aware of and considered Rios's strong work history . . . but found her statements about the severity of her symptoms not entirely credible for other reasons.  He was not required to do more.").

Next, Plaintiff argues the ALJ failed to consider that she "continues to suffer from pseudodementia" which "demonstrates ongoing problems with memory caused by depression and anxiety." (Dkt. 19 at 23.)  As discussed above, the ALJ properly evaluated all evidence of record in his RFC assessment and found that "no additional limitations are supported because [Plaintiff] ha[d] generally had intact speech, memory, concentration, thought processes, and thought content." (Tr. 23.) Moreover, in finding Plaintiff had a moderate limitation in "understanding, remembering, or applying information," the ALJ noted:

> Treatment records from Lakeland Regional Behavioral generally reported the claimant had regular speech, linear and goal directed thought processes, logical associations, normal thought content, and adequate memory, language, and fund of knowledge (Exhibits 7F, 10F, and 14F).  The claimant's records from Rogers Behavioral Health noted she had logical, goal oriented, and linear thought processes, normal thought content, average intelligence, normal speech, and intact long-term memory (Exhibit 8F and 9F). In addition, Dr. Thomas DiGeronimo reported the claimant had normal remote memory and intact recent memory (Exhibit 3F).  More recently, the claimant's primary care physician, Sherrilyn Detiquez, MD reported that a mental status examination she performed on September 28, 2020 showed that the claimant's memory was normal (Exhibit 16F), and the claimant's psychiatrist, Ankur Goyal, MD, reported on January 6, 2021 that the claimant's recent and remote memory were grossly intact (Exhibit 18F).

- 31 -

(Tr. 16.)  Accordingly, contrary to Plaintiff's argument, the ALJ properly evaluated Plaintiff's medical evidence as it pertains to any alleged "ongoing problems with memory caused by depression and anxiety." (Dkt. 19 at 23.)  The ALJ found that the record did not establish greater limitations than those included in the RFC assessment, and his decision is supported by substantial evidence.  (Tr. 23.)

Lastly, Plaintiff argues "the ALJ failed in his RFC determination by failing to consider the difference between non-stress circumstances and normal work circumstances with normal work stress." (Dkt. 19 at 23.)  As previously stated, the ALJ considered and evaluated medical evidence of record and included mental restrictions in Plaintiff's RFC, to the extent those limitations were supported by the record.  The ALJ found that Plaintiff "can understand, remember, carry out, and maintain persistence for work duties that are detailed when tasks are combined but made up of simple tasks requiring only common sense understanding, in a work environment with few day-to-day changes in terms of work processes, work settings, or work duties." (Tr. 17.)  To the extent Plaintiff argues that her impairments warrant greater restrictions, the ALJ noted "that no additional limitations [were] supported because [Plaintiff] ha[d] generally had intact speech, memory, concentration, thought processes, and thought content." (Tr. 23.)

Plaintiff's argument here is, in essence, that there is evidence in the record that could support a different RFC determination.  This is outside of the scope of this court's review.  *See Moore*, 405 F.3d at 1213 ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions

- 32 -

misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner. . . even if the evidence preponderates against the decision.") (citations and quotations omitted).   Because the ALJ's RFC assessment is supported by substantial evidence, remand for reconsideration of Plaintiff's RFC is unwarranted. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on December 22, 2022.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record